IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,                                  Mag. No. 08-0361 KJM

    vs.

MICHAEL ALLEN,

    Defendant.                               <u>ORDER</u>

_____/

        Defendant is charged in two counts with violations of California Vehicle Code sections 14601.1(a) (driving on a suspended license) and 12500(a) (license not in possession). Each count also charges 18 U.S.C. § 13 (Assimilative Crimes Act). A bench trial was held on April 6, 2009. Richard Shoemaker-Moyle, Certified Law Student, represented the government. Chris Baudino, Certified Law Student, represented defendant, with the assistance of Misdemeanor Staff Attorney Michael Petrik from the Office of the Federal Defender. Following trial the matter was submitted pending resolution of the question addressed by this order.

/////

/////

/////

1

I. <u>Review of Charges</u>

California Vehicle Code section 14601.1 provides in relevant part:

(a) No person shall drive a motor vehicle when his or her driving privilege is suspended or revoked . . . , and when the person so driving has knowledge of the suspension or revocation. . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(c) Nothing in this section prohibits a person from driving a motor vehicle, which is owned or utilized by the person's employer, during the course of employment on private property which is owned or utilized by the employer, except an offstreet parking facility as defined in subdivision (c) of Section 12500.

Cal. Veh. Code § 14601.1.

Section 12500 provides in relevant part:

(a) A person may not drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under this code, except those persons who are expressly exempted under this code.

(c) . . . .As used in this subdivision, "offstreet parking facility " means any offstreet parking held open for use by the public for parking vehicles and includes any publicly owned facilities for offstreet parking, and privately owned facilities for offstreet parking where no fee is charged for the privilege to park and which are held open for common public use of retail customers.

Cal. Veh. Code § 12500.

And, finally, the Assimilative Crimes Act (ACA), provides in part:

Whoever within [a federal enclave] . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).

Defendant moved for a judgment of acquittal at the close of the evidence, arguing that the Tracy Defense Depot is private property utilized by defendant's employer; this motion, now briefed by the prosecution and the defense, is currently before the court.

II. Facts

Ernie Wright is a police officer for Defense Logistics Agency at Tracy Defense Depot. Around 2:30 p.m. on June 16, 2008, Officer Wright was on 6th Street, heading toward B Street on the Defense Depot, within the special maritime and territorial jurisdiction of the United States. Wright saw three people he described as employees or workers, wearing badges issued by the government, putting a traffic sign in a Toyota pick-up truck. Another truck and a "scooter," similar to a golf cart, were on the scene as well. The latter was a government scooter used by NANA Services, a contractor. Defendant was one of the three people at 6th and B streets; he was an employee of NANA Services. Officer Wright stopped to confer with all three; they advised him that someone had knocked down the sign.

Officer Wright left the area and notified dispatch that a traffic sign had been knocked down. When the dispatcher told him the workers were responsible for the damage, he returned to the area. Defendant, who had been driving the scooter, explained he had not previously described his role in the incident because Wright had not asked. After Officer Wright's return to the scene, defendant did provide a written statement admitting that he "clipped the sign" as he was driving and bent the rim of the scooter's front tire. Gov't's Ex. 9. Wright confirmed that the scooter showed signs of the collision. Gov't's Exs. 3-5. Wright told defendant to have his supervisor fill out form 91, an accident report for government vehicles.

Sometime later, Wright checked the status of defendant's driver's license and learned it had been suspended. A certified copy of defendant's driving record showed the suspension and his signature, dated May 2008, on the notice of the suspension. Gov't Exs. 1, 2.

Officer Wright also testified that a person wishing to enter the Tracy Defense Depot must stop at the main gate. Those with government identification or placards may enter the depot; employees are allowed on the base during their employment as are vendors and members of the public with business on the depot. Members of the public cannot enter the base without

/////

authorization and would be subject to arrest for trespassing if present without permission. Those allowed on the base are subject to citation for a variety of Vehicle Code violations.

III. Analysis

By way of background, the purpose of the ACA is to conform the criminal law of federal enclaves to that of the surrounding jurisdiction when Congress has not defined criminal offenses or specified punishment. United States v. Sharpnack, 355 U.S. 286, 291-92 (1958). The Ninth Circuit has observed that the ACA "should give the people within a federal enclave as much protection as is afforded to those outside of the enclave." United States v. Kiliz, 694 F.2d 628, 629 (9th Cir. 1982). Accordingly, the ACA "promotes the even-handed application of state law to local conduct that the federal law does not punish and, but for the situs being a federal enclave, would qualify as a local offense." United States v. Waites, 198 F.3d 1123, 1127 (9th Cir. 2000)

Defendant does not dispute that he was driving a motor vehicle, that his licence was suspended and that he had notice of the suspension. He argues instead that under the provisions of what he calls the "employee exception" provided by California Vehicle Code section 14601.1(c), he is not guilty. In response, the government argues that the roads on the Tracy Defense Depot are highways within the definition of the California Vehicle Code and thus cannot be private property within the meaning of section 14601.1.[1] Defendant counters that the government is recasting the issue improperly as one of jurisdiction, an argument the government contests. Both sides appear to agree there is no case law, state or federal, defining the "employee exception" of section 14601.1(c)[2] and the court has found none.

In Kiliz, the Ninth Circuit considered whether roads on Puget Sound Naval Shipyard were "public highways" within the meaning of Washington's statutes prohibiting driving without a license. The evidence at trial showed that permission was necessary for entry into the

---

[1] Further statutory references are to the California Vehicle Code unless otherwise identified.

[2] Similar exceptions are included in sections 14601(d) and 14601.2(h).

4

shipyard, that defendant passed through a guardpost and was issued a vehicle pass, but did not reveal the extent to which entry onto the shipyard was restricted. 694 F.2d at 629. The statute at issue applied to one who "drives a motor vehicle on any public highway" when his driver's license was suspended. Id. at 629 n.1. Kiliz, the defendant, argued that the restrictions on entry into the shipyard meant that the area where he was stopped was not a public highway. Although he also argued the ACA did not apply, it was not a jurisdictional argument: the argument challenged the application of Washington's statute to his actions. Id. at 629.

The Ninth Circuit upheld the conviction. It rejected Kiliz's reliance on the word "public" in Washington's statute as removing the shipyard's roads from the operation of the law because "all 'highways' are by definition public." Id. at 630. The court continued:

> The relevant public in this case is the apparently large number of people who use the roadways of the shipyard daily. This includes, presumably, military personnel and civilian workers. The roadway's use, at least on the record before this Court, does not seem to be lacking in this 'public' character.

Id. The court rejected Kiliz's claim on policy grounds as well, for it found the logical extension of his argument to be that any restricted access area, such as a state park, would not be within the definition of a public highway, something which did not square with legislative policies to protect its citizens through regulation of the driving privilege Id. at 631. Finally, the court concluded that even if Kiliz's interpretation of Washington's statutes were correct, his conviction would nevertheless be upheld under the ACA:

> [T]he clear purpose of the ACA [is] to provide the same protections to those inside a federal enclave that a state's criminal code gives to those within the jurisdiction of the state. Thus the 'offense' that defendant committed within the federal enclave was simply driving while his license was revoked. This is the offense against which those in federal enclaves need protection.

Id.

In reaching its conclusions, the Ninth Circuit relied on United States v. Barner, 195 F.Supp. 103 (N.D. Cal. 1961), a district court case that considered whether the roads on

McClellan Air Force Base were highways within the meaning of the California Vehicle Code. According to the record before the Barner court, civilian employees and military personnel were required to obtain a decal for entry into the industrial area, while others were admitted only after providing proof of vehicle ownership, a valid driver's license and insurance information, among other things, which entitled them to a temporary pass. Id. at 104-05. The court also considered section 360, which defines a highway as "'a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel,'" which includes a street.[3] Id. at 105. The court observed:

> In an enclave of exclusive Federal jurisdiction, 'publicly maintained' can mean but one thing, and that is maintained by the Federal Government.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> The roadways on McClellan Air Force Base are ways or places used for purposes of vehicular travel. They are publicly maintained, being maintained by the sole sovereign which has jurisdiction over the area . . . . They are open to the public, subject only to reasonable restrictions and regulations. Certain members of the general body of the people of the State of California, who have no business upon the base, may be barred from using the roadways in the industrial portion of the base. However, the general body of the people of McClellan Air Force Base, who work or reside there, have a general right to use those roadways, subject to reasonable restrictions and regulations. These roadways clearly come within the definition of 'highway' when a realistic application of the term is made.

Id. (footnote omitted).

The only California authority that appears to address this question is an opinion from the California Attorney General, which analyzed the question whether the provisions of the Vehicle Code applied to the roads of the Los Angeles Air Force Base. That base consists of parcels of federal property over which the federal government has a proprietary interest, rather

---

[3] Similarly, the Vehicle Code defines street as "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Street includes highway." Section 590.

than as part of the maritime and territorial jurisdiction of the United States. It is the latter jurisdiction that converts crimes to federal offenses under the ACA. 85 Cal. Ops. Atty. Gen. 68 at 1, 7 & n.1 (2002). The Attorney General first examined the Vehicle Code definitions of "street" and "highway," and case law defining "publicly maintained" as "'maintained by some public agency or body.'" He determined that the federal government was a public agency or body for purposes of section 360. Id. at 5.

The Attorney General then turned to the question whether the streets on the base were "open to the use of the public" even though "access to the roads of LAFB is by permission only and is denied to anyone without proper credentials, identification, and legitimate business purpose." Id. at 6. He relied on both Barner and Kiliz in concluding that "the roads at the LAFB and its annexes constitute streets and highways within the meaning of the Vehicle Code's definitions of such terms. Accordingly, the provisions of the Vehicle Code are applicable to the roads of the LAFB and its annexes." 85 Cal. Ops. Atty. Gen. at 7.

Finally, courts from other circuits considering related questions have, for the most part, concluded that roads in federal enclaves are either highways or other types of roads sufficiently open to the public and thus subject to state vehicle laws. In United States v. Taylor, 441 F.Supp. 2d 747, 753, 755 (D. Md. 2006), the District Court concluded that roads on the Aberdeen Proving Grounds were probably "highways" and were certainly "private property used by the public in general" within the definition of Maryland's laws. In United States v. Daniels, 471 F.Supp.2d 634, 640 (E.D. Va. 2007), the court found that the road running through the Marine Base at Quantico, Virginia was a highway because it was open to the public for vehicular traffic; the court quoted Kiliz: "'it would render the ACA . . . meaningless if the defendant could not be prosecuted in federal court for the identical offense on the roads in the federal enclave as he had only moments before perpetrated on the state roads.'" Similarly, in United States v. Hill, 473 F.3d 112, 116 (4th Cir. 2007), the Fourth Circuit found that a road leading to the gate to the United States Naval Amphibious Base and maintained by the navy was a highway within the

contemplation of Virginia statutes. However, in United States v. Smith, 395 F.3d 516, 521 (4th Cir. 2005), the same court found that the access road leading to the main gate of CIA headquarters in McLean, Virginia was not a highway because it was posted with signs barring unauthorized admittance and the general public was not otherwise allowed on the access road.

As in Barner and the Attorney General's opinion, the roads on the Tracy Defense Depot are patrolled by employees of the federal government and maintained by "the sole sovereign which has jurisdiction over the area." As in Barner, Kiliz, and the Attorney General's Opinion, the roads on the Depot are open to the "relevant public" of those employed or with business on the Depot grounds. Accordingly, defendant was driving on a highway without his driver's license in violation of section 12500(a). Moreover, because a highway is "by definition public," it cannot be private property within the meaning of section 14601.1(c). See also section 490 ("'Private road or driveway' is a way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other members of the public.").

Moreover, even if the court considers only the language of the employee exception itself of section 14601.1(c), without reference to the definition of a highway, it still finds that defendant's conduct falls within the general prohibition against driving on a suspended license. Because defendant is relying on an exception to the general prohibition against driving anywhere with a suspended license, he "has the burden of establishing and showing that he comes within the exception." United States v. Gravenmeir, 121 F.3d 526, 528 (9th Cir. 1997) (internal citation & quotation omitted). He has not met his burden here.

Defendant has cited nothing suggesting that property within the special maritime and territorial jurisdiction of the government can be deemed private property. Just the opposite is the case: public property is defined as "[s]tate- or community- owned property not restricted to any one individual's use or possession." See Black's Law Dictionary (8th Ed. 2004) (found under definition of "property").

Even if the Tracy Defense Depot could somehow be considered private property, the exception is nevertheless inapplicable. Defendant does not and could not claim that his employer, the contractor NANA Services, owns the Defense Depot. Defendant has suggested, though with little proof, that NANA Services utilizes the Depot, which thus gives rise to the exception in 14601.1(c). Under this interpretation, the exception would apply to any private property an employer uses, whether people not subject to the employer's control had access to the property or the employer had the right to exclude others from the property.

A "textual analysis of the relevant statutory provisions" renders defendant's claim unavailing. See Washington v. Chu, 558 F.3d 1036, 1043 (9th Cir. 2009). An offstreet parking facility as defined in section 12500(c) is specifically exempted from the private property exception. Section 14601.1(c). Such a facility, in turn, is defined as a place held open for the use of the public for parking by retail customers, among other things. Section 12500(c). The definition thus suggests any employer-utilized property that may be traversed by those not under the control of the employer is not private property within the meaning of this exception. In this case, members of the "relevant public" who are not employed by NANA Services have access to the Defense Depot; nothing in the record suggests that NANA Services has any control over those people. The Defense Depot thus is not private property utilized by NANA Services within the meaning of section 14601.1(c).

IT IS HEREBY ORDERED that:

1. Defendant's motion for a judgment of acquittal (docket no. 7) is denied;

2. Defendant is guilty of violating California Vehicle Code sections 14601.1(a) and 12500(a); and

3. Sentencing is set for May 21, 2009 at 10:00 a.m. in Courtroom Twenty-Six.

DATED: May 1, 2009.

2/allen.mja

_____
U.S. MAGISTRATE JUDGE